USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _8/26/2022_

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
SIGNIFY HOLDING B.V. f/k/a
PHILIPS LIGHTING HOLDING B.V.,

                                        Plaintiff,                           **21-CV-9472 (JGK) (KHP)**

                    -against-

TP-LINK RESEARCH AMERICA CORP. and                              **OPINION AND ORDER**
TP-LINK USA CORP.,

                                        Defendants.
-------------------------------------------------------------------X

**KATHARINE H. PARKER,  United States Magistrate Judge:**

         Plaintiff Signify Holding B.V. ("Signify") has moved to compel Defendants TP-Link

Research America Corporation ("TPRA") and TP-Link USA Corporation ("TPUSA"), (collectively,

"TP-Link") to produce three files relating to sales of LED Retrofit Bulbs, which Signify claims are

covered under a patent license agreement between the parties.  (ECF No. 63.)  The three files in

question concern sales by non-party TP-Link Corporation Limited ("TPC"), a Hong Kong-based

affiliate of TP-Link.

         TPRA is no longer in business.  TPUSA is alleged to be an alter-ego of TPRA and thus

subject to the license agreement.  Among other things, TPUSA made royalty payments to

Signify under the license agreement and shared some management with TPRA.  TPC is not a

party to the patent license agreement.  It is not alleged to share any of the same management

with TP-Link, but it is under the same corporate umbrella as TP-Link and utilizes the same

attorneys as TP-Link.  TPC also supplied LED Retrofit Bulbs to TPUSA.

         The patent license agreement provides a specific definition of "Affiliate."[1]  (ECF No. 68.)

The parties dispute whether TPC is an Affiliate of TP-Link Research America Corporation within

---

[1] The agreement specifies:  **"Affiliate(s)"** shall mean any legal entity, which is (are) directly or indirectly: (i) owned
or controlled by either Party, (ii) owning or controlling either Party, or (iii) owned or controlled by a legal entity

1

the meaning of the patent license agreement such that it must pay royalties to Signify based on its sales.

In an effort to settle the dispute over royalties, TP-Link and TPC participated in joint negotiations with Signify that included discussion of TPC entering into a new patent license agreement with Signify.  (*Id.*)  TP-Link and TPC used their joint counsel to represent them in those discussions.  (*Id.*)  In the context of those negotiations, TPC provided the sales information at issue here to Signify.  (*Id.*)  TP-Link provided a corporate structure chart to Signify identifying TP-Link entities that it viewed to be affiliates within the meaning of the patent license agreement—which did not include TPC—along with these affiliates' domestic and foreign sales of TP-Link LED products.  (*Id.*)  At TP-Link's request, this Court directed Signify to return or destroy the documents that it obtained from TP-Link and TPC through the settlement discussions, on the condition that TP-Link produce those responsive documents within their possession, custody, or control in the ordinary course of discovery.  (ECF No. 42.)

TP-Link now refuses to produce the documents provided by TPC during the settlement discussions, because, TP-Link argues, the documents are not relevant and TP-Link does not have possession, custody, or control over those documents.  (ECF No. 68.)

If TPC is an affiliate within the meaning of the patent license agreement, the three sales files at issue would be relevant for determining damages under the patent license agreement.

---

directly or indirectly owning or controlling either Party, but any such legal entity shall only be considered an Affiliate for as long as such ownership or control exists. For the purpose of this definition, a legal entity shall be deemed to own or control another legal entity if more than 50% (fifty per cent) of the voting stock of the latter legal entity, ordinarily entitled to vote in the election of directors (or, if there is no such stock, more than 50% (fifty per cent) of the ownership of or control in the latter legal entity) is held by and consolidated in the annual accounts of the owning or controlling legal entity or if such owning or controlling legal entity otherwise has the ability to direct the business activities of such legal entity.  (ECF No. 68-3.)

The issue before the Court, then, is whether TP-Link has possession, custody or control over the three files reflecting TPC sales such that it should be compelled to produce them.  TP-Link argues that it does not have  "control" over the files because TPC is a "separate corporation" that is "not owned or controlled" by TP-Link.  (*Id.*)  TP-Link argues that Signify must obtain the documents through appropriate third-party process.  Because Hong Kong is a party to the Hague Convention, the Court assumes that TP-Link is referring to the Hague Convention process for obtaining documents from a foreign corporation.  For its part, Signify contends that TP-Link has possession, custody, or control of the documents because its counsel has the documents by virtue of its representation of TPC and TPC's participation in the joint negotiation/settlement discussions and provision of the sales data to Signify in those discussions.

## DISCUSSION

Rule 26 permits discovery of information relevant to the claims and defenses and proportionate to the needs of the case.  Fed. R. Civ. P. 26(b)(1).  Information about damages is relevant to claims and defenses.  Rule 34 permits a party to serve on another party information within such party's "possession, custody or control," subject to the restrictions of Rule 26(b).  Fed. R. Civ. P. 34(a).  Rule 34 and the Advisory Notes to it are silent on what is meant by "possession, custody and control."  Courts in the Second Circuit follow the so-called "practical ability" standard; that is, a party has "possession, custody, or control" over a document if it has the practical ability to obtain and produce the documents.  See *Shcherbakovskiy v. Da Capo Al Fine, Ltd*., 490 F.3d 130, 138 (2d Cir. 2007) ("control" implies a party's "access and the practical ability" to obtain documents);  *In re Application of CBRE Glob. Inv'rs. (NL) B.V.*, 2021 WL 2894721, *3 (S.D.N.Y. Jul. 9, 2021) (same); *see also* The Sedona Conference Commentary on

Rule 34 and Rule 45 "Possession, Custody or Control" ("Sedona Conf. Comm."), 17 Sedona Conf.

J. 467, 482-92 (2016) (discussing three different standards among federal appeals courts for

determining whether a party has "possession, custody, or control" of documents requested in

discovery). At least some courts have found that "practical ability" means a party's ability to

obtain documents on demand. *See, e.g.*, *S.E.C. v. Credit Bancorp, Ltd.*, 194 F.R.D. 469, 471

(S.D.N.Y. 2000). In some cases, this means that a corporate party has the practical ability to

obtain and produce documents held by a parent, subsidiary, or sister corporation. *Id*. at 474. In

*S.E.C. v. Credit Bancorp, Ltd*., the court found that having access to a document held by an

affiliate in the normal course of business would qualify as "control" over the document. *Id*.

This approach has been criticized because it may conflict with international restrictions

on data movement and ignore formal corporate structures, by-passing alter-ego or veil-piercing

analyses. Sedona Conf. Comm. pp. 501-07. It also has been criticized because it increases the

burden on a party to obtain documents from a non-party. *Id*. at p. 518. The Court is not sure

that the criticism is fully warranted. A foreign law that precludes a party from producing data

would be a factor in determining a party's practical ability to obtain and produce it. Similarly,

as the Court recognized in *S.E.C. v. Credit Bancorp, Ltd*., having access to a document in the

normal course of business is a separate consideration relevant to deciding a company's

practical ability to obtain a non-party affiliate's document—if the company's relationship is

such that one has routine access to the other's documents, the entities may be operating

practically as one entity and there is little reason for the formal corporate structure to impede

discovery. 194 F.R.D. at 472. Routine access also could suggest that a document likely could be

found, and thus possessed, in both entities' servers and files, meaning that both entities are in possession of the document.[2]

Signify argues that because TPC gave the documents to its counsel, who also are counsel for TP-Link, TP-Link can order its counsel to turn over the documents. This clearly is not the law. While it is true that a client has control over its *own* documents in the possession of its attorneys, *Hake v. Citibank, N.A.*, 2020 WL 1467132, at *6 (S.D.N.Y. Mar. 26, 2020), it is not correct that a client has control over its attorneys' *other clients'* documents also possessed by the attorneys. Such a rule would turn client confidentiality on its head and ride roughshod over attorney ethical obligations to their clients. It is likewise incorrect to conclude TP-Link has control over documents because its attorney has control over them when the attorney possesses them only by virtue of TPC providing them.

When a party contests that it has possession, custody and control of the relevant information, the requesting party has the burden of establishing possession, custody and control. *In re Liverpool Ltd P'ship*, 2021 WL 5605044, *2 (S.D.N.Y. Nov. 24, 2021). Signify provides some facts to suggest that TP-Link might have a practical ability to obtain the records including, TPC voluntarily stepped into joint negotiations with TP-Link to resolve the royalties dispute, TPC supplied bulbs to TP-Link, and TPC and TP-Link are under the same corporate

---

[2] Some courts outside of the Second Circuit applying the "practical ability" test have applied Rule 26 proportionality concepts when determining whether to require a party to seek the information through a Rule 45 subpoena rather than through a Rule 34 request. *See, e.g., Lynn v. Monarch Recovery Mgmt, Inc.*, 285 F.R.D. 350, 361 (D. Md. 2012). This Court, however, is skeptical whether this approach is correct. In this Court's view, proportionality considerations come into play once "possession, custody or control" has been established, because even if a party has possession, custody or control of certain information, proportionality principals may weigh against production of such information. Additionally, proportionality principals apply to party and non-party discovery alike. In this case, there is no claim by TP-Link that the documents sought are disproportionate to the needs of the case.

umbrella and share counsel.  But none of these facts are sufficient to make a definitive ruling on control.

However, at the same time, TP-Link is somewhat cheeky in is opposition to the motion to compel.  It has not affirmatively stated that the records do not exist on its email servers or in the file of its 30(b)(6) witness and executive, Mr. Deyi Shu.  The sales records might have been shared with TP-Link, not just Signify, in the context of the joint negotiation.  If the sales records exist in Mr. Shu's email or other files of TP-Link, then TP-Link is in possession of the documents and could produce them.  It also has not stated that it formally requested the documents from TPC, advised TPC that the documents can be obtained regardless via The Hague process, and that TPC nevertheless denied the request.

Accordingly, Plaintiff's motion to compel is denied without prejudice.  As required by Rule 34, TP-Link shall state whether it (as opposed to its counsel) is in possession of the requested documents.  If it is in possession of them, it shall produce them.  Signify also may inquire about the corporate relationship between TP-Link and TPC at the deposition of Mr. Shu and other questions pertinent to whether TP-Link may have practical access to the documents in question.  If Signify learns facts establishing that TP-Link has possession, custody, or control over the documents, Signify may renew its motion if needed.

**The Clerk of the Court is respectfully requested to terminate ECF No. 63.**

**SO ORDERED.**

DATED:  New York, New York
           August 26, 2022

_Katharine H Parker_

KATHARINE H. PARKER
United States Magistrate Judge

6